IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DELTONA TRANSFORMER
CORPORATION, a Florida Corporation,

      Plaintiff,

v.

FENG DEQIAN d/b/a MROINGE, an
individual,

      Defendant.

JURY TRIAL DEMANDED

Case No.:

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

      Plaintiff, Deltona Transformer Corporation, by and through its undersigned attorneys, for its Complaint against Defendant Feng Deqian d/b/a Mroinge, states and alleges as follows:

## NATURE OF THE ACTION

      1.    This is an action for trademark and trade dress infringement, false designation of origin and unfair competition under the Trademark Act, 15 U.S.C. §§ 1051, *et. seq*., as amended (the "Lanham Act"), copyright infringement under 17 U.S.C. §§ 101, *et seq*. (the "Copyright Act"), violation of the Defend Trade Secrets Act under 18 U.S.C. § 1836, *et seq.*, violation of the Florida Uniform Trade Secrets Act (§§ 688.001 to 688.009, Fla. Stat.), unfair competition and deceptive acts and practices in violation of the laws of the State of Florida.  Plaintiff seeks preliminary and permanent injunctive relief and an award of profits, damages, and other related relief.

104691349

2.     As detailed herein, Defendant has been an employee in the R&D department of an authorized manufacturer that makes Plaintiff's products.

3.     Such manufacturer constructs products for Plaintiff using, and that use, Plaintiff's confidential and proprietary information (as further defined below, the "Confidential Information") and that bear the Plaintiff's trademarks and trade dress (as further defined below, collectively, the "Asserted Marks").

4.     By virtue of Defendant's employment, Defendant worked on Plaintiff's products and had access to and knowledge of Plaintiff's Confidential Information and full knowledge of Plaintiff and its brands, including the Asserted Marks.

5.     Recognizing the value of the goodwill, distinction and reputation which Plaintiff has created in its products and the Asserted Marks, Defendant, in violation of his employer's non-disclosure restrictions, developed a competing charger product (as further defined below, the "Infringing Products") that he marked with nearly identical trademarks and trade dress as compared to the Plaintiff's Asserted Marks.  In addition, Defendant's Infringing Products were launched for sale along with a product description that was copied verbatim from Plaintiff's original product descriptions and along with graphics that copy original and protectable elements from Plaintiff's marketing materials (Plaintiff's works, collectively, and as further defined herein, the "Copyrighted Works").

6.     All such conduct was done blatantly and deliberately with the intent to trade on the goodwill, distinction and reputation of Plaintiff's brand, trade dress and copyright, cause confusion and deception in the marketplace, and divert potential sales of Plaintiff's products to the Defendant.

104691349

## THE PARTIES

7.      Plaintiff, Deltona Transformer Corporation ("Plaintiff" or "DTC"), is a Florida corporation with its principal place of business at 801 International Speedway Blvd., Deland, Florida 32724.

8.      Feng Deqian is an individual that resides in or near Dongguan City, Guangong, China ("Defendant" or "Deqian").

9.      Defendant is selling and marking the Infringing Products with the following names, none of which are registered companies in China: Mroinge, Dongguan Mroinge Electronic Technology Co., Ltd., Mroinge Corporation, and Mroinge International, Ltd.

## JURISDICTION AND VENUE

10.     Plaintiff's claims are predicated upon the Lanham Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et seq.*, the Copyright Act of 1976, as amended, 17 U.S.C. § 101, *et seq.*, the Defend Trade Secrets Act under 18 U.S.C. § 1836 *et seq.* and related claims under the statutory and common law of the State of Florida.

11.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).  This Court also has supplemental jurisdiction over Plaintiff's state and common law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

12.     This Court has personal jurisdiction over Defendant because, upon information and belief, (1) Defendant has committed, and continues to commit, acts of infringement in the Middle District of Florida (the "District"); and (2) Defendant has purposefully directed infringing conduct at Plaintiff in the State of Florida, which has caused and continues to cause Plaintiff harm in the State of Florida.

104691349

13.    Venue is proper under 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in the District and has committed acts of infringement in the District.

## GENERAL ALLEGATIONS

**A.    Plaintiff's Trade Secrets, Trademarks, Trade Dress and Copyright**

14.    Plaintiff is a privately-owned company, started in 1965.

15.    Plaintiff, through its licensee, manufactures, distributes, offers for sale, sells, markets, advertises and promotes chargers and charge maintainers for batteries used in the automotive, motorcycle and power sport industries.

16.    Plaintiff is the owner of proprietary and confidential information that is used in its products, including in its chargers and charge maintainers for batteries, concerning in particular:

- the process pursuant to which the products are manufactured, produced and constructed;

- material selection;

- vendor selection;

- management of manufacturing costs or capacities;

- manufacturing related logistics;

- quality control methods;

- product design;

- design specifications technology; and

- customer information,

4

104691349

all relating to Plaintiff's branded charger products (collectively, the "Confidential Information").

17.    Plaintiff's licensee and its licensee's manufacturers and suppliers are granted limited access to its Confidential Information, which they are required to maintain in strict confidence and use only to accomplish work for Plaintiff and for no other purpose.

18.    In connection with its products, Plaintiff has continuously used for almost *three decades* and is the exclusive owner and holder of both valid and subsisting federal statutory rights and common law rights to the BATTERY TENDER®, DELTRAN BATTERY TENDER®, and SUPERSMART BATTERY CHARGER® trademarks, including substantial goodwill therefor.  Further, in connection with such products, Plaintiff has continuously used since 2009 and is the exclusive owner and holder of both valid and subsisting federal statutory rights and common law rights to the POWER TENDER® trademark, including substantial goodwill therefor.

19.    Plaintiff is the owner of the following U.S. Trademark Registrations, for the above-described trademarks.

| U.S. REG. NO. | REG. DATE | TRADEMARK MARK |
|---|---|---|
| 3474591 | JULY 29, 2008 | BATTERY TENDER® |
| 4750963 | JUNE 9, 2015 | BATTERY TENDER® |
| 4281421 | JANUARY 29, 2013 | DELTRAN BATTERY TENDER® |
| 4509295 | APRIL 8, 2014 | POWER TENDER® |
| 1746603 | JANUARY 12, 1993 | SUPERSMART BATTERY CHARGER® |

104691349

20.     All such registrations are valid and subsisting, in full force and effect.  U.S. Trademark Registration Nos. 3474591, 4281421 and 4509295 have become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065, and, as such, constitute conclusive evidence of their validity and Plaintiff's ownership thereof.  Attached as **Exhibits 1, 2** and **3** are: (1) the registration certificates and notice of acceptance of statement of use and incontestability for Plaintiff's Registration Nos. 3474591, 4281421 and 4509295, all registered on the Principal Register; (2) the registration certificate for Plaintiff's Registration No. 4750963, registered on the Principal Register; and (3) the registration certificate for Plaintiff's U.S. Trademark Registration No. 1746603, registered on the Supplemental Register.

21.     Plaintiff is also the owner of International Registration No. 1227645 registered July 29, 2014 for the BATTERY TENDER® trademark, and of over 35 international registrations worldwide for the  BATTERY TENDER® trademark for similar goods identifications, including in Albania, Argentina, Armenia, Australia, Azerbaijan, Belarus, Brazil, Canada, Chile, China, Colombia, Cuba, Egypt, European Union, Georgia, Iceland, India, Indonesia, Israel, Japan, Kenya, Republic of Korea, Mexico, Norway, Philippines, Russia, Serbia, Singapore, South Africa, Switzerland, Thailand, Turkey, Ukraine, Venezuela, Vietnam, and Taiwan.

22.     Plaintiff has exclusively and continuously used the above-described trademarks stylized with yellow text as in the below design marks (all of the above referenced word marks and below design trademarks herein referred to as the "Trademarks").

6

104691349



23.    Plaintiff is also the owner, by virtue of its continuous and exclusive use for almost thirty years, of common law rights in and to the color green as applied to the front panel of its charger and related products (the "Trade Dress"; together with the Trademarks, the "Asserted Marks"), as shown below:



24.    Plaintiff filed U.S. Trademark Application Nos. 88363320 and 88363362 on March 29, 2019, for registration on the Principal Register, for the Trade Dress.  Both applications were found by the examining attorney during their prosecution to be entitled to registration on the Principal Register.  Attached as **Exhibit 4** to the Complaint are the application details from the USPTO's Trademark Electronic Search System (TESS) for U.S.

Trademark Application Nos. 88363320 and 88363362, and the respective Notices of Publication that were issued for each, which closed the Office's examination of the applications and stated that the applications were entitled to proceed towards registration.

25.    Plaintiff's Trademarks and the Trade Dress have been consistently and prominently used on the charger products themselves, as well as on packaging, in sales materials, and in consumer advertising for Plaintiff's charger products, including in the one displayed below.  Examples of other marketplace uses are attached as **Exhibit 5**.



26.    Plaintiff's branded chargers have used the Trade Dress since the initial launch of Plaintiff's charger products under the Trademarks.

27.    The Trade Dress as used on chargers serves no purpose or function other than to identify Plaintiff as the source of the goods.

28.    Plaintiff's Trade Dress provides Plaintiff with a competitive advantage and has become, through its widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of Plaintiff, its high quality goods, and its goodwill.

29.    In advertising and packaging its products, Plaintiff uses the distinctive Trade Dress, to readily identify goods offered exclusively by Plaintiff and to allow the consumer to easily identify Plaintiff as the source of its products.

30.    Because of Plaintiff's extensive and exclusive use of the Trade Dress on and in connection with Plaintiff's chargers, the Trade Dress has come to be uniquely associated with and distinctive for Plaintiff, its brand, and its products.

31.    Plaintiff's distinctive Trade Dress has become synonymous with Plaintiff and the Trademarks and has acquired strong secondary meaning within the minds of the relevant consuming public.

32.    Plaintiff's website, located at www.batterytender.com, on which Plaintiff's branded products are marketed and offered for sale, has consistently used the Trademarks and Trade Dress.

33.    Plaintiff's social media pages on Facebook, Instagram and Twitter, on which Plaintiff's branded products are marketed, have also consistently used the Trademarks and Trade Dress.

34.    Plaintiff gained significant marketing exposure for the Trademarks and Trade Dress through the sponsorship of sporting events attended by hundreds of thousands of people, including at the Global Mazda MX-5 Cup, IndyCar Series and 2018 Lucas Oil Pro Motorcross Championship, and The American Le Mans Series.

104691349

35.    Plaintiff has also marketed the Trademarks and the Trade Dress at trade booths and displays at industry events, including the SEMA Show, AIMExpo Motorcycle Show and the Automotive Aftermarket Products Expo.

36.    Plaintiff's branded charger products have for decades been, and today remain, as top-selling batteries, chargers and battery-related accessories in the automotive, motorcycle, and power sport industries.

37.    Plaintiff's branded charger products are consistently touted by the motorcycle and power sports industries as being the number one charger available.

38.    Plaintiff's Trademarks, Trade Dress and the products offered thereunder have received significant unsolicited coverage in various forms of media and outlets.

39.    Plaintiff's branded chargers have been the only official authorized charger for the Harley-Davidson® Motorcycle Company for over a decade, and BMW® Automotive, BMW® Motorcycle, Lexus®, Corvette® and AAA® are all long-time customers of Plaintiff's branded charger products.

40.    As a result of its widespread, continuous, and exclusive use and promotion of the Trademarks and the Trade Dress to identify its products and Plaintiff as their source, Plaintiff owns and holds not only the valid and subsisting federal statutory rights described above for the Trademarks, but exclusive common law rights to and substantial goodwill in the Trademarks and Trade Dress.

41.    Plaintiff's Trademarks and Trade Dress are distinctive to both the consuming public and Plaintiff's trade, which have come to associate the Trademarks and the Trade Dress exclusively with Plaintiff.

104691349

42.    Plaintiff has expended substantial time, money, and other resources in developing, marketing, advertising, and otherwise promoting its brand, including the Trademarks, the Trade Dress, and the products sold thereunder.

43.    The products are offered and sold under the Trademarks and Trade Dress through various means and modes throughout the United States and the world, including at retail outlets, at wholesale, through institutional channels and specialty stores and on the Internet, including the website located at www.batterytender.com.

44.    As a result of Plaintiff's extensive expenditures and efforts, the Trademarks and Trade Dress are widely and favorably known across the United States and internationally to the trade and purchasing public to exclusively identify the sole source of the products offered by Plaintiff, signify the high quality of the products designated by the Trademarks and Trade Dress, and have acquired incalculable distinction, reputation, and goodwill value belonging exclusively to Plaintiff.

45.    Plaintiff enforces its rights herein under Plaintiff's Trademarks and Trade Dress in order to protect the very valuable rights and excellent reputation Plaintiff has worked so hard to achieve and to prevent public confusion.

46.    For use in connection with Plaintiff's branded charger products, Plaintiff independently created an original product description, containing a narrative along with certain stylistic embellishments in the text, for example, discussing that the charger has a "brain," and marketing graphics showing eight original, organized icons with text about the product features (the "Copyrighted Works").   Such text and graphics are, in part, displayed below.

104691349

- Spark proof during lead connection, reverse polarity protected and includes a 12-foot output cord and 5-year warranty
- Perfect for charging all 12-volt lead-acid, flooded or sealed maintenance free batteries (AGM and gel cell) and safety timer-80 hours
- Complete 4-step charging program (Initialization, Bulk Charge, Float Mode) allows for optimization of battery power, without overcharging
- Automatic charge cycle functionality switches to float mode after fully charging the battery
- Solid state two color LED indicates stage of charger and if the battery voltage drops too far under load, full charger output power resumes

Battery Tender Junior 12V Battery Charger is much more than a trickle charger. It has a brain, is lightweight, compact, fully automatic and very easy to use especially in small spaces. This battery charger will keep the battery fully charged so that it is ready to go always. It has a microprocessor controlled fully automatic charger and maintainer and is designed to extend the life of any lead acid battery commonly used in automobiles, motorcycles, ATVs, personal watercraft, RVs, boats, airplanes, golf carts, back-up generator systems, etc. Any vehicle or battery-operated piece of equipment not used on a daily or regular basis is a candidate for a Battery Tender charger. The advanced technology will bring the battery back to a full charge without overcharging and then float or maintain the battery for an indefinite period of time. The Battery Tender Junior comes equipped with alligator clips and ring terminals for easy hook up. An optional 25 feet extension cord (part number 081-0148-25) is sold separately.

**Battery Tender Junior Benefits and Features**







**Smart Microcontroller**
Our onboard computer assures correct level of power is sent to the battery at all times.

**ISM Adaptive Charging**
ISM (Infinite Sequential Monitoring) adapts to the battery's needs hundreds of times per second.

**Reversed Hook-Up Protection**
Battery Tender checks for a correct connection before giving power.







**Sparkproof**
Battery Tender checks for a correct connection before giving power.

**Quick Disconnect Harness**
Connect and disconnect ⊡Battery Tender Junior in seconds.

**Connect and Forget It**
Once connected, the Battery Tender manages your battery's health on it's own.

12

47.     Plaintiff is the owner of all rights, title, and interest, including the copyright, in and to the Copyrighted Works.

48.     The Copyrighted Works is an original work of authorship entitled to copyright protection.

49.     Effective November 4, 2019, the United States Copyright Office issued Registration No. TX 8-796-573 and TX 8-803-392, covering the Copyrighted Works, which are valid and subsisting and in full force and effect.  The U.S. Copyright Registration Certificates and copies of the registered works in each are attached as **Exhibit 6**.

**B.**     **Defendant's Improper and Illegal Conduct**

50.     Defendant, purporting to operate under the names "Mroinge," "Dongguan Mroinge Electronic Technology Co., Ltd.," "Mroinge Corporation" and "Mroinge International, Ltd." (none of which are registered Chinese company names), is importing and selling Infringing Products in U.S. commerce.

51.     Such Infringing Products are available for consumer purchase on the Internet, including through e-commerce websites, such as Amazon.com and eBay.com, and on the website available at www.mroinge.com, under and in connection with the Asserted Marks and variations thereof (the "Infringing Marks").  Defendant's website www.mroinge.com is attached as **Exhibit 7**.

52.     Defendant's Amazon Seller Page is attached as **Exhibit 8**.  As of the date of the Complaint, the Infringing Products on Amazon are offered under at least the following ASIN numbers:     B01FTPZ6P4,     B0716HN1Y4,     B07MCTXFC7,     B010NRKERI, B07N1993MV, B078Y67C3F, B073P7B4P1.

104691349

53.    A side-by-side comparison of Plaintiff's and one of the Defendant's products (the "Infringing Products") is depicted below:



| DTC's Product | Mroinge's Product |
|---|---|

54.    A sample of the Infringing Product, as purchased from Amazon, is shown below.  Additional photographs of this Infringing Product and its packaging are attached hereto as **Exhibit 9**.



55.    As shown by the above pictures, the Infringing Products use a nearly identical shade of yellow combined with a green front panel as those used in Plaintiff's Trademarks and Trade Dress, and Defendant's presentation of the Infringing Products in its product images is almost identical in format and display as Plaintiff's presentation of its authentic products.

56.    Further, in connection with the advertising and promotion of the Infringing Products, Defendant is using the Trademarks and variations thereof, as keywords and/or search terms to trigger its advertisements and the display of the Infringing Products for sale to consumers online.

57.    Additionally, Defendant is using the trademark "Super Smart Battery Charger", which is identical to one of Plaintiff's Asserted Marks, SUPERSMART BATTERY CHARGER®, in the content of its product advertisements, as shown below.



58.     Defendant also adopted a product description and graphics in connection with the advertising, marketing, and sale of its Infringing Products, that copied the original and creative features of Plaintiff's Copyrighted Works (the "Infringing Works").

59.     Indeed, the Infringing Works are essentially identical to one of the Copyrighted Works and copy verbatim protected materials from another Copyrighted Works.  Representative samples of Defendant's advertising are shown in relevant part below and attached hereto as Exhibit 7.



**Mroinge MBC016** 6V&12V 1A Battery Charger is much more than a trickle charger. It has a smart brain, is lightweight, compact, fully automatic and very easy to use especially in small spaces, that digitally controls the 4-stages of battery charging (Initialization, constant current, constant voltage and floating charge). the charger come with power down memory function, so the charger will re-start to charge the battery automatically when the main power recovered.

This battery charger will keep the battery fully charged so that it is ready to go always. It has a microprocessor controlled fully automatic charger and maintainer and is designed to extend the life of any 6V and 12V lead acid battery commonly used in automobiles, motorcycles, ATVs, personal watercraft, RVs, boats, golf carts, back-up generator systems, etc.



**Mroinge MBC010** 12V 1A Battery Charger is much more than a trickle charger. It has a smart brain, is lightweight, compact, fully automatic and very easy to use especially in small spaces, that digitally controls the 4-stages of battery charging (Initialization, constant current, constant voltage and floating charge). the charger come with power down memory function, so the charger will re-start to charge the battery automatically when the main power recovered.

This battery charger will keep the battery fully charged so that it is ready to go always. It has a microprocessor controlled fully automatic charger and maintainer and is designed to extend the life of any 12V lead acid battery commonly used in automobiles, motorcycles, ATVs, personal watercraft, RVs, boats, golf carts, back-up generator systems, etc.



104691349

60.     Defendant's conduct has caused and is likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of Defendant's products, and has and is likely to deceive the relevant consuming public into believing, mistakenly, that Defendant's products originate from, are associated or affiliated with, or are otherwise authorized by Plaintiff.

61.     Indeed, actual confusion resulting from Defendant's sales of the products under the Infringing Marks is occurring in the marketplace.

62.     It is clear that Defendant deliberately sought to draw attention and traffic to Defendant's own battery charger products using Plaintiff's goodwill and distinction to harm Plaintiff, its Asserted Marks, and brand, and/or to mislead consumers as to Defendant's association or affiliation with Plaintiff.

63.     Upon learning of Defendant's unauthorized use of the Infringing Marks, Plaintiff began an investigation into Defendant's identity and location within China.

64.     With the information initially obtained, Plaintiff sent several letters by FedEx and email to various physical and email addresses that Plaintiff identified as possibly being connected to Defendant that demanded Defendant cease and desist its unauthorized use of Plaintiff's Asserted Marks.

65.     Each demand letter sent by FedEx was returned undeliverable.

66.     The demand letters that Plaintiff's counsel sent by email did not receive a bounce back email.

104691349

67.     Failing to receive any response from Defendant to any of its demand letters and seeing no change in Defendant's online activities, Plaintiff engaged local counsel to attempt to identify the source of the Infringing Products.

68.     Upon investigation, it was uncovered that Defendant is, and for over 10 years has been, an employee in the Research and Development department of an authorized manufacturer of Plaintiff's licensee.

69.     Such manufacturer constructs goods, including battery chargers, for Plaintiff that use the Confidential Information and bear the Asserted Marks.

70.     By virtue of his employment, Defendant has access to Plaintiff's Confidential Information relating to Plaintiff as defined above and full knowledge of Plaintiff's goods bearing the Asserted Marks.

71.     The investigation uncovered that, using Plaintiff's Confidential Information in an unauthorized manner and his knowledge of Plaintiff's Asserted Marks, Defendant engaged certain unknown factories to assist with the manufacture of the Infringing Products and began to sell and export such products into the United States.

72.     Defendant's acts are willful, with the intent to trade on the goodwill, distinction and reputation of Plaintiff's brand and the Asserted Marks, cause confusion and deception in the marketplace, divert potential sales of Plaintiff's products to the Defendant, and otherwise harm Plaintiff and its brand.

73.     Defendant's acts are causing, and unless restrained, will continue to cause damage and irreparable harm to Plaintiff and to its valuable and hard earned reputation,

104691349

distinction and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

74.    As a result of Defendant's misappropriation, infringing activities and unfair competition, Plaintiff has been damaged.

75.    Plaintiff has retained the undersigned counsel and is obligated to pay it a reasonable fee in connection with this action.

**COUNT I**
**<u>Federal Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1114</u>**

76.    Plaintiff adopts, repeats and realleges each and every allegation previously set forth in paragraphs 1 through 75 in this Complaint as if fully set forth in this paragraph.

77.    Plaintiff is the sole and exclusive owner of the federally-registered Trademarks BATTERY TENDER®, DELTRAN BATTERY TENDER®, POWER TENDER®, SUPERSMART BATTERY CHARGER®.

78.    Such Trademarks, as used by Plaintiff in connection with its goods, are distinctive or have acquired secondary meaning.

79.    Plaintiff's registrations for the BATTERY TENDER®, DELTRAN BATTERY TENDER®, and POWER TENDER® Trademarks are incontestable and thus constitute conclusive evidence of Plaintiff's ownership and the validity of such Trademarks.

80.    Defendant has used and is continuing to use the Infringing Marks, including as affixed to the Infringing Products and as keywords and search terms in digital advertising, in providing identical or substantially similar goods to those offered by Plaintiff.

81.    Defendant's activities complained of herein have been without Plaintiff's consent.

19

82.    Defendant's unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's products, and is likely to cause consumers to believe, contrary to fact, that Defendant's products are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff. Defendant's conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

83.    Defendant has committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the registered Trademarks and with the willful intent to cause confusion and trade on Plaintiff's goodwill and reputation.

84.    Defendant's conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

85.    Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**COUNT II**
**Federal False Designation of Origin and Unfair Competition**
**Under the Lanham Act, 15 U.S.C. § 1125(a)**

86.     Plaintiff adopts, repeats and realleges each and every allegation previously set forth in paragraphs 1 through 75 in this Complaint as if fully set forth in this paragraph.

87.     Defendant's unauthorized use in commerce of the Infringing Marks is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's products, and is likely to cause consumers to believe, contrary to fact, that Defendant's products are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff.

88.     Defendant's unauthorized use in commerce of the Infringing Marks constitutes use of a false designation of origin and misleading description and representation of fact.

89.     Upon information and belief, Defendant's conduct is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff.

90.     Defendant's conduct constitutes trademark infringement, unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

91.     Defendant's conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court.  Plaintiff has no adequate remedy at law.

104691349

92.     Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT III
## Common Law Trademark Infringement and
## Unfair Competition

93.     Plaintiff adopts, repeats and realleges each and every allegation previously set forth in paragraphs 1 through 75 in this Complaint as if fully set forth in this paragraph.

94.     The aforementioned acts of Defendant constitute trademark and trade dress infringement and unfair competition in violation of the common law of the State of Florida.

95.     Such conduct on the part of Defendant has allowed Defendant to wrongfully profit and has injured Plaintiff in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

96.     Defendant's actions as set forth above permit recovery of Defendant's profits, damages, and costs by Plaintiff, including treble damages and Plaintiff's attorney's fees.

97.     Defendant's conduct was malicious and wanton and Plaintiff is entitled to an award of punitive damages under Florida law.

## COUNT IV
## Federal Copyright Infringement

98.     Plaintiff adopts, repeats and realleges each and every allegation previously set forth in paragraphs 1 through 75 in this Complaint as if fully set forth in this paragraph.

104691349

99.     Plaintiff owns all right, title and interest in and to the copyright in the Copyrighted Works.

100.    Plaintiff has complied with all statutory formalities under Title 17 of the United States Code to maintain this action for copyright infringement.

101.    Defendant has had access to the Copyrighted Works, as it is displayed by Plaintiff on the Internet in connection with the marketing, advertising, and sale of its products.

102.    Defendant's Infringing Works are so substantially similar to the Copyrighted Works that an average lay observer would recognize the Infringing Works as a copy.

103.    Defendant's conduct as set forth herein has been without the permission, consent or license of Plaintiff.

104.    Without authorization from Plaintiff, Defendant violated Plaintiff's exclusive rights under 17 U.S.C. § 106(a) by copying and reproducing the Copyrighted Works, preparing derivative works based on the Copyrighted Works, and displaying the copied, reproduced and/or derivative works.

105.    Defendant copied, used and made derivative works of the Copyrighted Works to assist with selling and promoting the Infringing Products sold by Defendant.

106.    Defendant's reproduction, copying and creation of derivative works was willful and in direct violation of Plaintiff's copyright.

107.    Plaintiff has been and continues to be damaged by Defendant's infringement.

104691349

108.    Defendant's unauthorized and improper conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to damage Plaintiff unless enjoined by this court.  Plaintiff has no adequate remedy at law.

109.    Plaintiff is entitled to, among other relief, injunctive relief, the impounding of all copies of or derivative works from the Copyrighted Works, and an award of actual damages or statutory damages, Defendant's profits, reasonable attorneys' fees, and costs of the action under 17 U.S.C. §§ 503, 504, and 505, together with prejudgment and post-judgment interest.

## COUNT V
## Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*

110.    Plaintiff adopts, repeats and realleges each and every allegation previously set forth in paragraphs 1 through 75 of this Complaint as if fully set forth in this paragraph.

111.    This is an action for trade secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* ("DTSA").

112.    Plaintiff possesses Confidential Information as previously alleged herein relating to the charger products that constitute trade secrets under the DTSA that relate to products and services used in or intended for use in interstate commerce, and that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means, by persons who can obtain economic value from the disclosure or use of the Confidential Information (the "DTSA Trade Secrets").

113.    Plaintiff's DTSA Trade Secrets are and have been the subject of efforts that are reasonable under the circumstances to maintain their secrecy, including, but not limited

104691349

to, requiring outside third parties, licensees, and vendors to sign non-disclosure and confidentiality agreements before having access to the DTSA Trade Secrets.

114.    Defendant knew that the DTSA Trade Secrets were acquired by the Defendant under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit the use of the trade secrets.

115.    Defendant misappropriated the DTSA Trade Secrets by disclosing and/or using the DTSA Trade Secrets without express or implied consent of Plaintiff when he knew or had reason to know, at the time of the disclosure and/or use, that his knowledge of the trade secret information was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit the use of the trade secrets and/or was derived through improper means, or from or through a company that owed a duty to Plaintiff to not disclose or use the trade secrets without the authorization of Plaintiff.

116.    Defendant's misappropriation of Plaintiff's DTSA Trade Secrets have caused Plaintiff to suffer actual loss, including lost profits and diminution in value of the DTSA Trade Secrets, and/or Defendant has been unjustly enriched thereby.

117.    Defendant's misappropriation of Plaintiff's DTSA Trade Secrets was willful and malicious, supporting an award of exemplary damages of not more than two times the amount of any actual loss and unjust enrichment.

## COUNT VI
## Violation of Florida's Uniform Trade Secrets Act, Fla. Stat. § 688.001 *et seq.*

118.    Plaintiff adopts, repeats and realleges each and every allegation previously set forth in paragraphs 1 through 75 of this Complaint as if fully set forth in this paragraph.

104691349

119.    This is an action for trade secret misappropriation under Florida Uniform Trade Secrets Act, Chapter 688, Florida Statutes ("FUTSA").

120.    Plaintiff possesses Confidential Information as previously alleged herein relating to the charger products that constitute trade secrets under the FUTSA that relate to products and services used in or intended for use in interstate commerce, and that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means, by persons who can obtain economic value from the disclosure or use of the Confidential Information (the "FUTSA Trade Secrets").

121.    Plaintiff's FUTSA Trade Secrets are and have been the subject of efforts that are reasonable under the circumstances to maintain their secrecy, including, but not limited to, requiring outside third parties, licensees, and vendors to sign non-disclosure and confidentiality agreements before having access to the FUTSA Trade Secrets.

122.    Defendant knew that the FUTSA Trade Secrets were acquired by the Defendant under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit the use of the trade secrets.

123.    Defendant misappropriated the FUTSA Trade Secrets by disclosing and/or using the FUTSA Trade Secrets without express or implied consent of Plaintiff when he knew or had reason to know, at the time of the disclosure and/or use, that his knowledge of the trade secret information was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit the use of the trade secrets and/or was derived through improper means, or from or through a company that owed a duty to Plaintiff to not disclose or use the trade secrets without the authorization of Plaintiff.

104691349

124.    Defendant's misappropriation of Plaintiff's FUTSA Trade Secrets have caused Plaintiff to suffer actual loss, including lost profits and diminution in value of the FUTSA Trade Secrets, and/or Defendant has been unjustly enriched thereby.

125.    Defendant's misappropriation of Plaintiff's FUTSA Trade Secrets was willful and malicious, supporting an award of exemplary damages of not more than two times the amount of any actual loss and unjust enrichment.

**COUNT VII**
**<u>Florida's Deceptive and Unfair Trade Practices Act</u>**

126.    Plaintiff adopts, repeats and realleges each and every allegation previously set forth in paragraphs 1 through 75 in this Complaint as if fully set forth in this paragraph.

127.    Defendant has been misleading consumers and is causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of his goods and services, and is otherwise damaging the public.  Defendant's conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of the Florida Deceptive and Unfair Trade Practices Act, § 501.201 *et seq.*, Fla. Stat. (2011).

128.    Defendant's conduct has caused and is likely to continue to cause substantial injury to the public and to Plaintiff, entitling Plaintiff to injunctive relief and to recover damages, its costs and its reasonable attorney's fees.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff, Deltona Transformer Corporation, prays that this Court enter judgment against Defendant, Feng Deqian d/b/a Mroinge, and in favor of Plaintiff as follows:

104691349

1.    Finding that Defendant's activities complained of herein are unlawful under Federal and Florida law;

2.    Granting an injunction permanently enjoining the Defendant, his employees, agents, officers, directors, managers, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities, from:

    a.    manufacturing, distributing, supplying, providing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute, supply, provide, sell, market, advertise or promote battery chargers and battery accessories bearing the Trademarks, Trade Dress, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Trademarks or Trade Dress;

    b.    engaging in any activity that infringes Plaintiff's rights in its Trademarks or Trade Dress;

    c.    engaging in any activity constituting unfair competition with Plaintiff;

    d.    making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that: (i) Defendant's goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or; (ii) Plaintiff's goods are in any manner

104691349

approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendant;

e.  using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff or tend to do so;

f.  registering or applying to register any trademark, service mark, domain name, trade name, trade dress, or other source identifier or symbol of origin consisting of or incorporating the Trademarks, the Trade Dress, or any other mark that infringes or is likely to be confused with Plaintiff's Trademarks or Trade Dress, or any goods or services of Plaintiff, or Plaintiff as their source;

g.  infringing or contributing to the infringement of Plaintiff's Copyrighted Works;

h.  reproducing, distributing, or otherwise using or contributing to the reproduction, distribution, or use of the Copyrighted Works, and any substantially similar or derivative works, and any other works found infringing;

i.  enjoin Defendant from using Plaintiff's Confidential Information and/or any other of Plaintiff's documents, information, data, files or other materials; and

104691349

j.     aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (i).

3.     Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, supplied, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendant are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's goods.

4.     Directing Defendant to immediately cease all manufacture, display, distribution, supply, marketing, advertising, promotion, sale, offer for sale and/or use of any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating the Trademarks, the Trade Dress, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Trademarks or Trade Dress, and to direct all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Defendant's goods or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other

104691349

materials featuring or bearing the Trademarks, Trade Dress, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Plaintiff's Trademarks or Trade Dress, and to immediately remove them from public access and view.

5.    Directing that Defendant recall and deliver up for destruction or other disposition all goods, packaging, shopping bags, containers, advertisements, promotions, signs, displays, and related materials incorporating or bearing the Trademarks, Trade Dress, or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of Plaintiff's Trademarks or Trade Dress.

6.    Compelling Defendant to immediately return to Plaintiff all originals and copies of any Confidential Information and/or documents, information, data, files, or other materials that Defendant took, copied, caused to be taken or copied, or received from Plaintiff, whether directly or indirectly.

7.    Directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendant to file with the court and serve upon Plaintiff's counsel within thirty (30) days after service on Defendant of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendant has complied therewith.

31

104691349

8.   Awarding Plaintiff an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

9.   Directing that Defendant account to and pay over to Plaintiff all profits realized by his wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

10.   Awarding Plaintiff punitive and exemplary damages as the Court finds appropriate to deter any future willful infringement.

11.   Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

12.   Awarding Plaintiff actual damages, including any profits of Defendant attributable to the infringement, or statutory damages.

13.   Awarding Plaintiff its costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

14.   Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

15.   Awarding such other and further relief as the Court deems just and proper.

104691349

## **JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  February 28, 2020

Respectfully submitted,

*/s/ Patricia M. Flanagan*
Patricia M. Flanagan
Florida Bar No. 58592
Megan A. McNamara
Florida Bar No. 112636
Fox Rothschild LLP
777 South Flagler Drive
Suite 1700, West Tower
West Palm Beach, FL 33401
Tel.: (561) 835-9600
Fax: (561) 835-9602
Email: pflanagan@foxrothschild.com
Email: mmcnamara@foxrothschild.com

*Counsel for Plaintiff*
*Deltona Transformer Corporation*

104691349